UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES W. HOWARD II     PLAINTIFF

v.     CIVIL ACTION NO. 3:16-CV-00752-CRS

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA     DEFENDANT

Memorandum Opinion

I.     Introduction

This matter is before the Court on the partial motion of Defendant the Prudential Insurance Company of America ("Prudential") to dismiss Count II of the first amended complaint and on its motion to strike the requests for extra-contractual and punitive damages, as well as the jury demand under Federal Rule of Civil Procedure 12(b)(6), ECF No. 15. Plaintiff James W. Howard II did not respond. For the reasons explained below, the Court will grant Prudential's partial motion to dismiss Count II. The Court will also grant Prudential's motion to strike the requests for extra-contractual and punitive damages, and the jury demand.

II.     Allegations in the First Amended Complaint

In May 2015, Howard was operating his vehicle in Louisville Kentucky. First Am. Compl. ¶ 4, ECF No. 13. He was traveling eastbound on Greenwood Road. *Id*. Howard experienced a medical emergency and became incapacitated at the wheel. *Id*. His son, a juvenile, was a passenger in the vehicle. *Id*. ¶ 5. The son attempted to take control of the steering wheel as the vehicle continued to accelerate. *Id*. The vehicle veered off the roadway's right shoulder, struck a culvert, severed a utility pole, and collided with a fence. *Id*. ¶ 6. It then crossed Russell Avenue, and stuck a street sign, fire hydrant, large shrubbery, and finally another utility pole. *Id*.

Howard was mechanically extracted from the vehicle and taken to the University of Louisville Hospital with life-threatening injuries. *Id*. ¶ 7. As a result of these injuries, his left hand was amputated at the wrist. *Id*. ¶ 8. It was determined that Howard had suffered a seizure while operating his vehicle, which resulted in his incapacitation and the subsequent collision. *Id*. ¶ 9. Howard had been diagnosed with Type I diabetes and might have been hypoglycemic at the time of the motor vehicle accident. *Id*. ¶ 10.

Also at the time of the motor vehicle accident, Howard was employed by the United Parcel Service. *Id*. ¶ 11. He was insured under an Accidental Death and Dismemberment Policy ("the policy") issued by Prudential. *Id*. Within ninety days of his motor vehicle accident, Howard made a valid claim for payment of benefits under the policy because of his left hand's amputation. *Id*. ¶¶ 12, 15.

The policy pays benefits for "accidental loss," meaning the loss of a person's hand or foot by severance at or above the wrist or ankle. *Id*. ¶ 13. The loss of the beneficiary's hand or foot must result directly from an accidental bodily injury and occur within ninety days after the accident. *Id*. ¶ 14. The policy does not, however, pay benefits for losses resulting from sickness, or from medical or surgical treatment of sickness. *Id*. ¶ 16.

In February 2016, Howard was notified that Prudential had denied his claim for benefits under the policy. *Id*. ¶ 12. Prudential explained that it had denied the claim because the loss of Howard's left hand resulted indirectly from sickness, or from the medical or surgical treatment of sickness. *Id*. ¶ 17. According to Prudential, Howard's insulin treatment for diabetes caused him to become hypoglycemic, which led to his seizure and eventual loss of his hand. *Id*.

Prudential also explained that it had denied the claim for benefits under the policy because the loss of Howard's hand resulted directly from sickness, or from the medical or

surgical treatment of sickness. *Id*. ¶ 18. Prudential asserts that Howard's insulin treatment for diabetes caused him to become hypoglycemic, which then caused him to suffer a seizure that led to the motor vehicle accident, which caused him to sustain an injury to his left hand that then led to the amputation of the hand. *Id*. Howard's medical records, however, indicate only that he became incapacitated while driving because of a possible seizure and that his left hand was amputated as a direct result of injuries he sustained in the motor vehicle accident. *Id*. ¶ 19.

Howard asserts two causes of action against Prudential in the first amended complaint. First, Howard claims that Prudential's denial of his claim for benefits under the policy violates the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B) (Count I). *Id*. ¶ 24. Second, Howard alleges that Prudential's actions violated the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), Ky. Rev. Stat. § 304.12-230 (Count II). *Id*. ¶ 25. Howard requests a jury trial, an award of exemplary, compensatory, and punitive damages, an award of reasonable costs and attorney fees, and any other appropriate relief. *Id*. 4–5.

III. <u>Discussion</u>

Prudential now moves to dismiss Howard's claim asserted under the KUCSPA and to strike the requests for extra-contractual and punitive damages, and the jury demand under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 1, ECF No. 15. Rule 12(b)(6) provides that a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a plausible claim for relief when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept legal conclusions or "threadbare recitals of the elements

of a cause of action." *Id*. When resolving a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

Prudential argues that the Court should dismiss Howard's claim asserted under the KUCSPA and requests for extra-contractual and punitive damages because they are preempted by ERISA as a matter of law. Mem. Supp. Mot. Dismiss 4–9, ECF No. 15-1. Prudential also claims that the Court should strike Howard's jury demand because ERISA does not provide for a jury trial. *Id*. at 10–14.

A. Whether ERISA Preempts Howard's Claim Asserted under the KUCSPA

Prudential maintains that the Court should dismiss Howard's claim asserted under the KUCSPA (Count II) because it is preempted by ERISA. Mem. Supp. Mot. Dismiss 4–9, ECF No. 15-1. Prudential explains further that Howard's "state law KUCSPA claim is brought solely to rectify an alleged wrongful denial of benefits promised under an ERISA-regulated plan and does not attempt to remedy any violation of a legal duty independent of ERISA. In accordance with well-settled precedent, [Howard's] state law claim and remedies are preempted by ERISA and should be dismissed with prejudice." *Id*. at 4.

Before turning to the merits of Prudential's preemption argument, the Court must first determine whether ERISA regulates the policy. ERISA regulates employee benefit plans established by employers or organizations that represent employees. 29 U.S.C. § 1003(a). ERISA defines "employee welfare benefit plan" as:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of

4

> providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

*Id*. § 1002(1).

To determine if a plan meets this definition of an employee welfare benefit plan, a district court must undergo a three-step factual inquiry. *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). First, the court applies "the so-called 'safe harbor' regulations established by the Department of Labor to determine whether the program was exempt from ERISA." *Id*. The "safe harbor" regulations exclude a plan from ERISA coverage if: (1) the employer does not contribute to the policy, (2) the employees voluntarily participate in the policy, (3) the employer simply collects premiums and gives them to the insurer, and (4) the employer receives only reasonable compensation for the administration of the policy. *Id*. at 435 (citing 29 C.F.R. § 2510.3-1(j)). A plan is excluded from ERISA coverage only if it meets all four of these criteria. *Id*. Here, applying this first factual inquiry, the plan is not excluded from ERISA coverage under the safe harbor regulations because United Parcel Service, Howard's employer, contributes to the policy. *See* Ex. B 5, ECF No. 1-2 (explaining that the premiums under the policy were to be paid by United Parcel Service).

Second, "the court must look to see if there was a 'plan' by inquiring whether 'from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Id*. (citing *Int'l Resources, Inc. v. N.Y. Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991)). Regarding this second factual inquiry, Howard's first amended complaint alleges that there was a plan: Howard claims

5

that he was insured under the policy, which was issued by Prudential. First Am. Compl. ¶ 11, ECF No. 13. He also asserts that the policy pays benefits for "accidental loss," meaning the loss of a person's hand or foot by severance at or above the wrist or ankle. *Id*. ¶ 13. Howard also asserts in the complaint that within ninety days of his motor vehicle accident, he made a valid claim for payment of benefits under the policy because of his left hand's amputation. *Id*. ¶¶ 12, 15.

Third and finally, "the court must ask whether the employer 'established or maintained' the plan with the intent of providing benefits to its employees." *Id*. Applying this third factual inquiry in the instant case, the policy appears to have been issued to provide benefits to employees of United Parcel Service. *See* Ex. B 2, ECF No. 1-2 ("Prudential will provide or pay the benefits described in the Group Insurance Certificate(s) listed in the Schedule of Plans of the Group Contract, subsect to the Group Contract's terms."). Given that the policy in this case meets the definition of an employee welfare benefit plan, it is regulated by ERISA. This conclusion is further supported by Howard's claim that Prudential's conduct violates ERISA. First Am. Compl. ¶ 24, ECF No. 13.

The Court now turns to the merits of Prudential's argument that ERISA preempts Howard's Kentucky state law claim. ERISA's preemption clause, Section 514(a), 29 U.S.C. § 1144(a), provides, "[T]he provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

In *FMC Corp. v. Holliday*, the Supreme Court noted that ERISA's "pre-emption clause is conspicuous for its breadth. It establishes an area of exclusive federal concern the subject of every state law that 'relates' to an employee benefit plan governed by ERISA." 498 U.S. 52, 58

6

(1990). In *Shaw v. Delta Air*, the Court explained that a state law claim "relates to" "an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines*, 463 U.S. 85, 96–97 (1983).

*Aetna Health, Inc. v. Davila* provides one example of ERISA preempting state law claims. 542 U.S. 200 (2004). In *Davila*, the plaintiffs were a participant and a beneficiary of two ERISA-regulated employee benefit plans. *Id*. at 204. The defendants administered the plans. *Id*. The plaintiffs suffered injuries allegedly arising from the defendants' decision not to provide coverage for certain health services. *Id*. at 204–05. The plaintiffs brought suit against the defendants in a Texas state court, alleging that their denial of benefits violated state law. *Id*. at 205. On appeal, the Supreme Court determined that the plaintiffs had brought suit to rectify a wrongful denial of benefits that had been promised to them under ERISA-regulated plans. *Id*. at 215. The state law claims did not attempt to correct any violation of a legal duty independent of ERISA. *Id*. The Supreme Court held that the state law claims fell within the scope of the federal law and were thus preempted by ERISA. *Id*.

In this case, Howard's KUCSPA claim alleges that Prudential's denial of his claim for benefits under the policy violated state law. First Am. Compl. ¶ 25, ECF No. 13. Even taking all reasonable inferences in favor of Howard, the KUCSPA claim relates to the policy, which, as noted above, is regulated by ERISA. Howard's KUCSPA claim does not seek to correct any violation of a legal duty that is independent of ERISA. Thus, Howard's KUCSPA claim is preempted by ERISA and the Court will accordingly dismiss Count II of the first amended complaint.

### B. Whether ERISA Preempts Howard's Request for Extra-Contractual and Punitive Damages

Prudential asserts that the Court should strike Howard's requests for exemplary, compensatory, and punitive damages in the first amended complaint because, like his KUCSPA claim, they are preempted by ERISA. Mem. Supp. Mot. Dismiss 9, ECF No. 15-1. ERISA's remedial provision provides that a plan participant or beneficiary may "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). The statute does not expressly provide for extra-contractual damages. The Supreme Court, however, has noted that "[t]he six carefully integrated civil enforcement provisions found in [ERISA] provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Thus, this Court holds that Howard's recovery is limited to benefits allegedly due under the insurance policy, and, depending on the proof that develops, Howard may seek to recover attorney fees under § 1132(g).

### C. Whether ERISA Provides for a Jury Trial

Prudential also moves to strike Howard's jury demand in the first amended complaint. Mem. Supp. Mot. Dismiss 10–15, ECF No. 15-1. Prudential argues that Howard is not entitled to a jury trial under ERISA or the Seventh Amendment to the United States Constitution. *Id*. ERISA does not include any provisions regarding the right to a jury trial. The United States Court of Appeals for the Sixth Circuit has held that ERISA claims are equitable in nature and thus not eligible for a jury trial. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998) (holding that an ERISA claim is equitable in nature and therefore is not eligible for a

jury trial); *Bair v. General Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir. 1990) (same). Howard thus cannot rely on ERISA to support his request for a jury trial.

Given that Howard cannot rely on ERISA to support his request for a jury trial, any right to trial by jury must arise under the Seventh Amendment. The Seventh Amendment states: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The Seventh Amendment right to a jury trial applies only when the relief sought is legal rather than equitable in nature. *Chauffeurs, Teamsters, and Helpers, Local 391 v. Terry*, 494 U.S. 558, 565 (1990). The Sixth Circuit, however, has determined that "the Seventh Amendment does not guarantee a jury trial in ERISA ... cases." *Reese v. CNH Am. LLC*, 574 F.3d 315, 327 (6th Cir. 2009). As such, this Court will grant Prudential's motion to strike the jury demand in the first amended complaint.

IV.    Conclusion

The Court will grant Prudential's partial motion to dismiss Count II of the first amended complaint. The Court will also grant Prudential's motion to strike the requests for extra-contractual and punitive damages, and the jury demand. An order will be entered in accordance with this memorandum opinion.

March 29, 2017

Charles R. Simpson III, Senior Judge
United States District Court